**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **DYMATIZE ENTERPRISES INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:09-CV-0046-O-BH** |
| | § | **(Consolidated with 3:09-CV-1719-O-BH)** |
| | § | |
| **MAXIMUM HUMAN PERFORMANCE,** | § | |
| **INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>**

Pursuant to Special Order No. 3-251, this case was referred for pretrial management, including the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendation on dispositive motions.  Before the Court is *Dymatize Enterprises, Inc.'s Second Motion for Summary Judgment*, filed April 7, 2010 (doc. 61).  Based on the relevant filings, evidence, and applicable law, the motion should be **DENIED**.

## I.   BACKGROUND

**A.     Procedural History**

On January 9, 2009, Dymatize Enterprises Inc. ("Dymatize") filed Civil Action No. 3:09-CV-0046 in this district against Maximum Human Performance Inc. ("MHP").  Dymatize sought a declaratory judgment that its advertising statements for its Elite 12 product did not constitute false advertising under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  A week later, on January 16, 2009, MHP filed suit against Dymatize and Michael Casid in the District of New Jersey, but the case was subsequently transferred to this Court and opened as Civil Action No. 3:09-CV-1719.  MHP alleged that Dymatize made false advertising statements about its Elite-12 product and asserted claims for false advertising and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. §

1125(a), violation of the New Jersey Fair Trade Act, N.J.S.A. § 56:4-1, and common law unfair competition. With the consent of the parties, the Court consolidated the two cases and ordered that the complaint in Civil Action No. 3:09-CV-1719 be considered a counterclaim against Dymatize and Casid in this action. Dymatize then amended its complaint to include six antitrust causes of action for monopolization and restraint of trade against MHP.

On April 7, 2010, Dymatize filed this motion for summary judgment, seeking summary judgment on all of MHP's claims for false advertising and unfair competition under § 43(a) of the Lanham Act, violation of N.J.S.A. § 56:4-1, and common law unfair competition. Dymatize also seeks a declaratory judgment that it did not engage in false advertising under the Lanham Act.

**B.     Factual Background**

Since September 2004, MHP has been selling Probolic®-SR, a nutritional supplement that contains whey, soy and casein protein, and employs proprietary, time-release micro-feed technology to deliver protein and amino acids over a 12-hour period after ingestion. (Resp. App. at 76.) MHP has developed a coating agent/technology for Probolic®-SR to convert it into a 12-hour protein product and has licensed the underlying patented sustained release technology. (*Id.*) Until 2007, Probolic®-SR was the only 12-hour protein product on the nutritional supplement market. (*Id.*)

Towards the end of 2007, Dymatize launched a protein product known as Elite 12 that also contained a mixture of whey, soy, and casein proteins. (*Id.*) Dymatize made the following advertising statements about Elite 12:

- "With 42 grams of Muscle Building Protein, Elite-12 Hour Meal Replacements are engineered to fuel muscles up to 12 hours whether taken as a meal or a snack";

- "[E]ach single serve pouch is packed with nitrogen producing protein, glutamine and branch-chain amino acids (BCAAS) propelling you beyond your limits. With Elite 12-Hour MRP, anytime is take down time";

2

- "Extended protein release fuels muscles up to 12 hours";

- "Dymatize understands that building muscle is an around-the-clock process *only when there is protein available around the clock.* Elite 12-Hour Protein has been formulated with this in mind; Elite 12-hour's protein blend is formulated for sustained release so you get positive nutritional support for Repair, Recovery, and Growth 24-7" (italics original);

- "Elite 12 is based on a time released formula";

- "Elite 12 is a "12 Hour Protein";

- "Elite 12 helps the user [k]eep positive nitrogen balance all day and while you sleep";

- "12 Hours of complete muscle resurgence";

- "Engineered to feed your muscles all day long";

- "Elite 12-Hour protein's time release formula works overtime to develop and repair your muscle mass all day long."

(*Id.* at 76-77, 95-100.)

Beginning in 2008, MHP commissioned a number of dissolution tests for Probolic®-SR and Elite 12 in order to determine whether Dymatize's advertising claims were false. (*Id.* at 81.) Dissolution tests conducted around April 2008 showed that Probolic®-SR was 37.3% dissolved after 12 hours, Elite 12 was 51.7% dissolved after 12 hours, and George Foreman, a control substance, was 29.5% dissolved after 12 hours. (Mot. App. at 52.) MHP representatives remarked in e-mail correspondence that the results were in reverse of the trend they expected. (*Id.*) One exclaimed "let me know if anyone can make sense out of this." (*Id.*) Another remarked: "this doesn't help things." (*Id.* at 63.) E-mail correspondence between April and November 2008 shows MHP's frustration with its attempts to design an experiment to prove the falsity of Dymatize's advertising statements. (*See id.* at 49-69.)

3

In November 2008, an MHP-commissioned dissolution test showed that Probolic®-SR was 93.5% dissolved at twelve hours, and its dissolution curve line continued upward over the twelve-hour period. (Resp. App. at 186.) Elite 12 was 81.4 % dissolved at twelve hours, and the dissolution curve line peaked at nine hours and proceeded downward through the twelfth hour. (*Id.* at 188.) In December 2008, another MHP-commissioned dissolution test showed that Probolic®-SR was 95.3% dissolved at twelve hours and its dissolution curve line continued upward over the twelve hour period. (*Id.* at 187.) Elite 12 was 93.8% dissolved at twelve hours and its dissolution curve peaked at nine hours. (*Id.* at 189.)

In January 2009, Dymatize filed its declaratory judgment action. During discovery, Dymatize admitted that it did not, as previously asserted , use Colorcon Inc.'s NS Enteric and Surelease coating ingredients, or any other aqueous coating system in the manufacture of Elite-12 to extend the elevated nitrogen levels from the initial time frame of eight hours to over twelve hours. ( Resp. App. at 78, 102, 41, 43-44.) It also admitted that even though it utilized a blend of oils during the manufacturing process, the oil blend was "probably mostly for the flavor and mouth feel" and that "longer absorption would be a side-effect of going for a better mouth feel and flavor." (*Id.* at 58-59, 74.)

In January 2010, Dr. Seymour Levine, relying on published studies by M. Lacroix and James E. Tang, rendered an expert report for MHP. (*Id.* at 80, 146-47, 157-63.) The report, based partly on Dymatize's admission that it did not utilize any Colorcon ingredients in the manufacture of Elite 12, opined that:

> Based on an evaluation of . . . ingredients on the [Elite 12] label, there are no ingredients that would have the ability to have the product provide "12 Hour Protein" as shown on the label of the commercially available product. The proteins contained in Elite 12 are whey, casein and soy. Each of these proteins has expected release rates upon ingestion. Although there are variations that may be expected based upon the age and health of the individual, one would expect that whey would release first,

4

followed by soy and then casein.  In no event, without a coating compound would the release period exceed eight hours.  The exact timing of the release would also be dependent on the nature of the raw material provided by the supplier.  However, in no case, will whey, soy and casein products release for up to twelve hours without utilizing a coating compound.

(*Id.* at 146.)  After reviewing Elite 12's product label, its manufacturing batch records, and its certificates of analysis, Dr Levine concluded:

> It is my expert opinion that there is no substantiation for Dymatize claiming that its 12 Hour Protein Product, Elite 12 has the ability to provide the release of protein for up to 12 hours upon ingestion.

(*Id.* at 80, 147.)

Dymatize's expert, Dr. Cory Berkland, opined that Dr. Levine's use of the word "release" was ambiguous and could infer dissolution of protein or circulation of amino acids from digested protein.  (*Id.* at 80-81, 168.)  Dr. Berkland pointed out that Elite 12 had additional proteins and ingredients not studied in the Lacroix and Tang publications.  (*Id.* at 168.)  He opined that those ingredients would change the dissolution rate of protein, and that any oils included in Elite 12 could also affect the dissolution rate.  (*Id.*)

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no

genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

## III.   EVIDENTIARY CONSIDERATIONS

Dymatize objects to the declaration by MHP's president, Gerard Dente, and to statements

made by MHP's attorney in its response brief.  (Reply Br. at 4-5, 16-18.)[1]

## A.      Dente's Affidavit

Although Dymatize contends that MHP has proffered inadmissible lay opinion testimony in

Dente's declaration, (*see* Reply Br. at 16-18), it does not specify which statements are inadmissible.

Fed. R. Evid. 103(a)(1) requires an objecting party to make specific objections detailing the specific

evidence it wishes to strike and stating the specific grounds for striking it.  *See Tucker v. SAS Inst.,*

*Inc.*, 462 F. Supp.2d 715, 722 (N.D. Tex. 2006) (citing *United States v. Avants*, 367 F.3d 433, 445

(5th Cir. 2004).  The Court is not required to ferret through the nine-page declaration in search of

objectionable statements.  *See id.*  To the extent that the declaration contains any statements that are

plainly inadmissible, however, they will not be considered.  *See Tucker*, 462 F. Supp.2d at 722 (citing

Fed. R. Evid. 103(d)).  Dymatize's objection to Dente's declaration is **OVERRULED**.

## B.      Attorney Statements in Response Brief

Dymatize objects to statements made by MHP's attorney in its response brief, including two

whole sections in the response brief,  as inadmissible lay opinion testimony.  (Reply Br. at 16-18.)

Dymatize argues that MHP has not laid the foundation required under the Federal Rules of Civil

Procedures to qualify its attorneys as experts.  (Mot. Br. at 17.)

The Federal Rules of Evidence limit the testimony of lay witnesses to opinions or inferences

which are (1) rationally based on the perception of the witness; (2) helpful to a clear understanding

of the witness' testimony or the determination of a fact issue; and (3) not based on scientific,

technical, or other specialized knowledge within the scope of Rule 702.  Fed. R. Evid. 701.  Here,

the statements by MHP's attorney in the brief are argument, not sworn testimony as provided by the

---

[1]Dymatize also initially objected to Dr. Levine's expert report because it was unsworn and therefore not competent summary judgment evidence.  (*Id.* at 4-5.)  MHP filed an unopposed motion for leave to file Dr. Levine's sworn declaration, and the Court granted the motion.  (*See* docs. 87-89.)  This objection is therefore moot.

Rules.  Dymatize's objection is **OVERRULED**.

## IV.  FALSE ADVERTISING

Dymatize moves to dismiss all of MHP's claims, including unfair competition under § 43(a), violation of N.J.S.A. § 56:4-1, and common law unfair competition, under the standard that applies to false advertising claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  Because MHP does not contest its applicability, the Court addresses all claims in tandem under the standard applicable to § 43(a) false advertising claims.[2]

To establish a prima facie case for false advertising under 43(a), a plaintiff must show that (1) the defendant made a false or misleading statement of fact about its product in a commercial advertisement; (2) the statement actually deceived or had a tendency to deceive a substantial segment of its audience; (3) the deception is material in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result.  *See Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).  Failure to prove any element is fatal to a plaintiff's claim.  *See Pizza Hut*, 227 F.3d at 495.

If the statements at issue are shown to be literally false, a court must assume that the statements actually misled consumers, without requiring any evidence of their impact on consumers. *Pizza Hut*, 227 F.3d at 497; *Logan*, 263 F.3d at 462.  If the statements are either ambiguous or

---

[2] Dymatize cites authority for its position that claims for unfair competition under New Jersey common law and N.J.S.A. § 56:4-1 can be analyzed under the standard for § 43(a) unfair competition, but does not cite any authority for its position that false advertising and unfair competition claim under § 43(a) are analyzed under the same standard.  There is some confusion in the Fifth Circuit as to whether the same standard applies to the two claims.  *Compare King v. Ames*, 179 F.3d 370, 373-74 (5th Cir. 1999) with *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 701 (5th Cir. 1981); *see also MCW Inc. v. Badbusinessbureau.com, L.L.C.*, 2004 WL 833595, *15 n. 14 (N.D. Tex. Apr. 19, 2004) (Fish, C.J.).  Notably, all of MHP's claims in this case are based on allegations of false advertising.

literally true but misleading, there is no such presumption, and a plaintiff must present evidence of actual consumer deception. *Pizza Hut*, 227 F.3d at 497. When seeking monetary damages, he must prove actual deception through direct evidence of actual consumer reaction to the advertising or through evidence of consumer surveys showing that a substantial number of consumers were actually misled by the advertisements. *See id.*; *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). When seeking injunctive relief, he must prove that the advertising statements "have a tendency to deceive consumers." *Pizza Hut*, 227 F.3d at 497 (citation omitted). This requires a showing that "at least some of the consumers were confused by the advertisements." *Id.*

## A.    Harm

Dymatize first moves for summary judgment on grounds that MHP has no evidence to support the fifth element of its prima facie case, i.e., that it has been harmed by the advertisements at issue. (Mot. Br. at 2-3.) Where, as here, the non-movant bears the burden of proof, the movant's burden may be discharged by pointing out to the Court that there is an absence of evidence to support an element of the non-movant's case. *Celotex*, 477 U.S. at 325. "[I]f the non-movant fails to present sufficient facts to support an essential element of his claim, summary judgment is appropriate." *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001) (citing *Celotex*, 477 U.S. at 322-23).

To meet its summary judgment burden, MHP must present sufficient evidence to show that it "has been or is likely to be injured as a result of the false advertising." *Logan*, 263 F.3d at 462. In the Fifth Circuit, the injury requirement for a false advertising claim is distinguishable from the requirement that a plaintiff prove actual damages in order to obtain relief. *See Logan*, 263 F.3d at 462. In order to establish injury, a plaintiff need only produce evidence sufficient for a jury to infer that he was in some way injured; he need not prove damages with particularity sufficient to establish

actual losses from the false advertising.[3]  *See id.* at 463.

MHP proffers testimony by its president, Gerard Dente, to show that it was injured by the advertising at issue.  (*See* Resp. Br. at 19, citing Resp. App. at 83.)  Dente's declaration states that Elite 12's introduction on the market in 2007 negatively and demonstrably affected sales of Probolic®-SR, which was the only 12-hour protein on the market until then, and that each sale of Elite 12 caused MHP to lose a sale of Probolic®-SR.  (Resp. App. at 83.)  MHP also asserts that a jury could infer some injury from its competitive relationship with Dymatize.  (Resp. Br. at 19.)  MHP's proffered evidence is sufficient for a reasonable jury to infer that Dymatize was in some way injured. MHP has met its burden to identify evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *See Celotex*, 477 U.S. at 324.  Dymatize is therefore not entitled to summary judgment on this basis.

**B**.     **Literal Falsity**

Dymatize also moves for summary Judgment based on the literal falsity element of a false advertising claim.   (*See* Mot. Br. at 4-7).

1.     No Expert Testimony on Literal Falsity [4]

Dymatize first argues that MHP has not offered any expert testimony that the disputed

---

[3]  Dymatize cites to *IQ Product Company v. Pennzoil Products Company.*, 305 F.3d 368, 375 (5th Cir. 2002) and its progeny for the proposition that a false advertising plaintiff must present evidence that consumers would have bought the plaintiff's products instead of the accused advertiser's products absent the accused's advertisements.  Even if *Logan*'s holding is contrary to the holding in *IQ products*, *Logan* is binding on this Court. It is well established that a panel of the Fifth Circuit "may not overrule the decision of a prior panel, right or wrong in the absence of an intervening contrary or superseding decision by the [Fifth Circuit] en banc or by the United States Supreme Court."  *Billiot v. Puckett*, 135 F.3d 311, 316 (5th Cir. 1998).  "[W]here two holdings or lines of precedent conflict, the earlier opinion controls and is the binding precedent."  *Id.* (citation and internal quotation marks omitted).

[4]  The Court need not reach the issue of whether MHP is required to produce expert testimony on the issue of literal falsity because MHP has proffered an expert report by Dr. Levine on the issue.

advertising statements are literally false, and that MHP must present evidence of literal falsity since it has no evidence of actual consumer deception from the disputed advertising.[5]  (*See id.* at 3-4.)

The burden now shifts to MHP to adduce evidence showing that the disputed advertising statements are literally false.[6]  MHP first argues that the statements at issue as well as other statements not discussed in Dymatize's opening brief broadcast a consistent theme – that Elite 12 is 12-hour protein supplement.  (*See* Resp. Br. at 14-15.)  MHP argues that Dymatize's motion is limited to only one aspect of its Elite 12 advertisements, i.e. "fuels muscles up to 12 hours", and ignores other claims made in the advertising.  (*Id.* at 15.)  MHP specifically points to the following advertising statements: "Elite 12 is a '12 hour Protein'", "12 hours of complete muscle resurgence", "One Scoop, Twelve Hours", "Elite 12-Hour protein's time release formula works overtime to develop and repair your muscle mass, day or night".  (*Id.*)  MHP also points to the product label of Elite 12 which claims that it is a "12 Hour Protein".  (*Id.* at 15.)  A reasonable jury could conclude that the complete advertising  statements as set out in the background section unambiguously mean that Elite 12 is a 12-hour protein supplement and can provide the release of protein for 12 hours.

MHP then proffers Dr. Levine's expert report which states that no ingredients listed on the Elite 12 product label "would have the ability to have the product provide '12 hour protein'" as claimed on the product label itself.  (*See* Resp. Br. at 15, citing Resp. App. at 146.)  The report explains that the proteins contained in Elite 12, whey, casein and soy, have expected release rates upon ingestion, and in no event would their release period exceed eight hours or reach *up to* twelve

---

[5] MHP does not dispute this assertion.

[6] Dymatize lists only the first seven advertising statements set out in the background section.  Even though MHP's complaint specifically lists only these first seven advertising statements, it states that Dymatize's false advertising statements are not limited to these seven statements.

hours without utilizing a coating compound.  (*Id.*)  The report points out that the ingredient list for Elite 12 fails to list any coating component.  (*See* Resp. App. at 146.)  Based on Dr. Levine's expert testimony, a reasonable jury could conclude that the statements at issue are literally false.  Even in the presence of Dr. Berkland's rebuttal report, there is at least a genuine issue of material fact that its advertising statements are literally false.

Since MHP has proffered evidence creating a genuine issue of material fact that the disputed advertising statements are literally false, the Court should deny Dymatize's motion for summary judgment based on its argument that there is no evidence of literal falsity.

2.  Contention that "Fuels Muscles" is Ambiguous

Dymatize asserts that MHP's contention in this litigation that "fuels muscles" is ambiguous is dispositive. (Mot. Br. at 6.)  Dymatize argues that Plaintiff cannot take the position that the phrase "fuels muscles" is literally false because it has previously contended that "fuels muscles" is ambiguous.  (*Id.*, citing Mot. App. at 38-40.)  It also argues that the statement "fuels muscles" is either ambiguous or literally true, therefore requiring evidence of actual consumer deception, which MHP cannot provide.  (Mot. Br. at 6.)

Dymatize's requests for admission asked MHP whether the term "fuels muscles" used in connection with a protein supplement referred to an increased protein serum level.  MHP objected to the form of the request, contending that the terms "fuels muscles" and "refer to increased protein serum level" were ambiguous and were taken out of the advertising statements in which they were made.  (Mot. App. at 39-40.)  Even assuming for purposes of this motion only that MHP's objection to a discovery request constitutes a claim that the phrase "fuels muscles" in Dymatize's advertisements is ambiguous, a reasonable jury could conclude that in the context of the complete

advertising statement, the phrase unambiguously means that Elite 12 can release protein for up to 12 hours:

- "With 42 grams of Muscle Building Protein, Elite-12 Hour Meal Replacements are engineered to fuel muscles up to 12 hours whether taken as a meal or a snack"

- "Extended protein release fuels muscles up to 12 hours"

A genuine issue of material fact exists as to whether the complete advertising statements at issue are unambiguous.  Dymatize has failed to show that summary judgment is warranted on this ground.

      3.    <u>Phrase "Fuels Muscles Up To 12 Hours"</u>

Dymatize also asserts that the undisputed fact that Elite 12 can fuel muscles for 8 hours literally satisfies its advertising claim that Elite 12 can fuel muscles *up to* 12 hours. (Mot. Br. at 7.) Whether a product that fuels muscles for 12 hours literally satisfies the condition of fueling muscles *up to* 12 hours is a question of fact more appropriate for the jury to decide, especially when there is an expert report stating that in no event would the protein release period of that product exceed eight hours or reach *up to* twelve hours.  Additionally, there are other statements – such as "Elite 12 is a 12 Hour Protein", "12 Hours of complete muscle resurgence"; "Engineered to feed your muscles all day long"; and "Elite 12-Hour protein's time release formula works overtime to develop and repair your muscle mass all day long" – that could lead a reasonable jury to conclude that Dymatize is claiming protein release for 12 hours, and not *up to* 12 hours.  Dymatize is not entitled to summary judgment on this ground.

**C.**    **No Evidence of False Advertising**

Dymatize also moves for summary judgment on grounds that there is no evidence to support

MHP's false advertising claims.  (Mot. Br. at 7.)  In so doing, it essentially reurges its arguments that MHP cannot adduce evidence to support the fifth and first elements of a prima facie case of false advertising under § 43(a) of the Lanham Act.  The Court has already found that MHP has identified a genuine issue of material fact as to each of these elements, and Dymatize's no evidence motion should be denied for the same reasons set forth above.

**D.      MHP's Evidence**

Dymatize also moves for summary judgment on grounds that MHP's own evidence supports Dymatize's advertising claims related to Elite 12.  (Mot. Br. at 8-11.)  Dymatize first points to two e-mails from MHP in order to set out a standard for measuring its 12-hour advertising claims.  (Mot. Br. at 8-9, citing Mot. App. at 62, 49-50.)  It then argues that MHP's dissolution tests from April 2008, November 2008, and January 2009, meet the standard set forth in the e-mails.  (Mot. Br. at 9, 10 n. 9, citing Mot. App. 52-54, 63, 73, 75.)  Even if this evidence supports Dymatize's advertising claims, as discussed earlier, Dr. Levine's expert report may lead a reasonable jury to conclude that the statements at issue are literally false.  In other words, there is competing evidence creating a material fact issue as to the truth of Dymatize's advertising statements.

Dymatize also argues that statements made by MHP in its e-mail communications point to its inability to create a test that would yield results against Dymatize.  (Mot. Br. at 9-11, citing Mot. App. 55-82.)  Whether or not MHP can design an experiment to prove its point, MHP has provided an expert report to show that Dymatize's advertising statements are literally false.  Since there is competing evidence sufficient for a reasonable jury to conclude that Dymatize's advertising is

literally false, the Court should deny Dymatize's motion for summary judgment.[7]

## V.  CONCLUSION

*Dymatize Enterprises, Inc.'s Second Motion for Summary Judgment* should be **DENIED**.

**SO RECOMMENDED** on this 24th day of June, 2010.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] Dymatize also asserts a new ground for summary judgment in its reply brief – that its advertisements are not actionable statements of fact because they are not capable of empirical verification by experiment or observation. (Reply Br. at 9-10.) Dymatize argues that Dente has admitted in his affidavit testimony that its tests were not precise because it is difficult to replicate the activity of the stomach.  Since the argument is addressed for the first time in Dymatize's reply brief and has deprived MHP of a meaningful opportunity to respond, it is not considered.  *See Spring Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (Fitzwater, J.) (noting practice of declining to consider arguments raised for the first time in a reply brief because nonmovant should be given a fair opportunity to respond to the motion) (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990)).